Date signed November 22, 2005



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| IN RE: : : | |
| ALEXANDRA CELIA AUSTIN : : | Case No. 04-29109PM |
| Debtor : | Chapter 7 |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : | |
| ALEXANDRA CELIA AUSTIN : | |
| Plaintiff : | |
| vs. : | Adversary No. 04-2214PM |
| U.S. DEPARTMENT OF EDUCATION : | : |
| HELP SERVICE GROUP, INC. : | |
| Defendants : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : | |

**MEMORANDUM OF DECISION**

Before the court is the Complaint filed by Debtor, Alexandra Celia Austin, pursuant to § 523(a)(8) of the Bankruptcy Code, whereby she seeks a ruling of this court that the debt owed to the United States Department of Education in the sum of $102,564.24, and a debt owing to HELP Service Group, Inc. ("HELP"), a Florida non-profit corporation, in the sum of $75,891.00, should be discharged, as a ruling to the contrary would impose an undue hardship on the Debtor and her dependents.  Section 523(a)(8) provides:

**11 U.S.C. § 523.  Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
  *  *  *  *  *
(8) for an educational benefit overpayment or load made, insured, or guaranteed by a governmental unit, or made under any program funded

>> in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend,
>>> unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

Debtor resides with her fiance, Terris Bynum, and her daughters, Anna Bynum, born March 22, 2005, and Olivia Bynum, born January 10, 2003, in public housing provided by Calvert County, Maryland. She is not presently employed. Debtor's education and work history are set forth in her resume that appears as HELP's Exhibit 6. That resume reflects that Debtor obtained a Bachelor of Arts Degree from the University of Maryland in 1991, a Juris Doctor Degree from St. Thomas University School of Law in Miami in 1995, and a LLM in Taxation from Georgetown University Law Center in 1996. The student loans were incurred to finance her legal education. Debtor was the Articles Editor of the St. Thomas University Law Review. While Debtor has passed the Maryland Bar examination, she has not yet been admitted to the Maryland Bar. Her application is pending.

After obtaining her master's degree, Debtor returned to Florida, where she worked as an associate attorney from 1997 to 1999, and then as a sole practitioner until 2001. Debtor left Florida to come to this area to assist her mother. Debtor's employment in the Metropolitan Washington area appears to have been as a horseback riding instructor at the MerryMount Equestrian Center in Upper Marlboro, Maryland, and as a stablehand. Debtor testified that she has made numerous applications for employment in the Federal Government and elsewhere in the legal field without success. The 4-person household depends almost entirely upon Mr. Bynum for support, although the Debtor's mother makes substantial contributions in the form of food and clothing purchases, particularly for her grandchildren.

Debtor's monthly financial statement reflects a very frugal budget. She is entirely dependent upon Mr. Bynum. Mr. Bynum's financial ability to support the Debtor and her two children is hampered by a court order requiring him to support his son. He is employed as a WalMart associate, although he is training to go into the healthcare field.

Debtor had three student loan accounts. One account owing to American Education Services of Harrisburg, Pennsylvania, was paid off in full, primarily through a lump-sum payment of $9,423.04 made on April 30, 1999. On the Department of Education loan, Debtor has made total payments of $3,450.00 in the period July 16, 1999, through February 26, 2001, all

but $327.49 being applied to interest. While Debtor's Exhibit 12 is not entirely clear, it appears that at least one payment was made on the principal of the HELP loan.

Debtor conducted the trial on her own behalf. Her performance in court was equal to that of many attorneys who appear in this court and better than some. She was well prepared and articulate. While Debtor testified that she suffers from Graves Disease and gestational diabetes, there was no competent evidence presented as to the impact that these conditions will have upon her future employment efforts.

The governing law in this Circuit regarding the dischargeability of student loans is found in the case of *In re Ekenasi*, 325 F.3d 541, 546 (CA4 2003). In the *Ekenasi* case the Circuit adopted the test set forth in the case of *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (CA2 1987) (Under this test, the debtor must establish (1) that he cannot maintain a minimal standard of living for himself and his dependents, based upon his current income and expenses, if he is required to repay the student loan; (2) that additional circumstances indicate that his ability to do so is likely to exist for a significant portion of the repayment period of the student loans; and (3) that he has made good faith efforts to repay the loans). In order to sustain the Debtor's burden that repayment of the loan qualifies as an undue hardship, a term not defined in the Bankruptcy Code, the Debtor must show that:

> "additional circumstances exist indicating that she cannot maintain a minimal standard of living for a significant portion of the repayment period if forced to repay her loans. This is a demanding requirement. As we indicated in *Faish* [72 F.3d 298 (CA3 1995)], it is not enough for Brightful to demonstrate that she is currently in financial straits; rather, she must prove 'a total incapacity . . . in the future to pay [her] debts for reasons not within [her] control.' *Id*. at 307 (quoting *In re: Brunner*, 46 B.R. 752, 758 (S.D.N.Y. 1985). In other words, 'dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment.' *Brunner, 46 B.R. at 755 (*quoting *In re: Briscoe,* 16 B.R. 128, 131 (Bankr. S.D.N.Y. 1981))); *see also In re: Ballard*, 60 B.R. 673, 675 (Bankr.W.D. Va. 1986) (explaining that '[a] finding of undue hardship is reserved for the exceptional case and requires the presence of unique or extraordinary circumstances which would render it unlikely that the debtor ever would be able to honor his obligations')."

*In re Brightful*, 267 F.3d 324, 328-29 (CA3 2001).

Getting back to the 3-part *Brunner* test, the court finds that Debtor sustained her burden by a wide margin as to the first aspect of the test based on her current situation. No one contends

that she can maintain a minimal standard of living for herself and her daughters if she is forced to repay the loans at this time.  It is not so clear as to the third aspect that she has made a good faith effort to repay the loans.  She received six forebearance or deferment letters from Sally Mae, now the Defendant, HELP Service Group, Inc.  She did pay some $3,450.00 over the entire term of the loan to the Department of Education.  What is very puzzling about her efforts is that she repaid American Education Services in full, primarily with one lump sum payment made April 30, 1999, in the sum of $9,423.04.  The source of this large sum of money is undisclosed.  There is likewise no explanation as to why this one loan in particular was singled out for special treatment.  Debtor has not sustained her burden with respect to this aspect of the *Brunner* test.

As to the second element, the court cannot find a total incapacity to repay the student loans for indefinite period in the future.  The Debtor has a master's degree in taxation from the Georgetown University Law Center.  Graduates of this prestigious institution are generally well compensated.  Within the foreseeable future, the Debtor's children will be in school; she will be in a position to rejoin the workforce, having voluntarily elected to leave it.  The court had the opportunity to observe Debtor's conduct in court and to make some appraisal of her legal ability.

Nonetheless, the court finds that some accommodation must be made to this Debtor.  Should she return to work, her eligibility for food stamps and rent assistance will cease.  Therefore, the court will cause, from the date of the entry of the Order herein forward, that the interest rate on the educational loans owing to the two Defendants be reduced to the sum of 1% per annum.  An appropriate order will be entered.

cc:
Alexandra C. Austin, 8500 Stock Drive, Lusby, MD 20657
Larry D. Adams, Esq., Assistant U.S. Attorney
      6625 U.S. Courthouse, 101 West Lombard Street, Baltimore, MD 21201
Allen F. Loucks, U.S. Attorney, 101 West Lombard Street, Baltimore, MD 21201
Thomas J. Sippel, Esq., 98 Church Street, Rockville, MD 20850
Merrill Cohen, 7910 Woodmont Avenue, Suite 760, Bethesda, MD 20814

**End of Memorandum**